## MUNGER v. HANCOCK. (No. 9319.)

(Court of Civil Appeals of Texas. Dallas. Feb. 21, 1925. Rehearing Denied April 4, 1925.)

**1. Brokers** ☞88(3)—**Whether broker for commission was procuring cause of sale held for jury.**

Evidence as to whether plaintiff broker was procuring cause of sale *held* sufficient to go to jury.

**2. Brokers** ☞54—**Must have produced purchaser ready, able, and willing to buy on terms authorized by owner.**

To entitle broker to commission for sale of land, he must have produced a purchaser, ready, able, and willing to buy on terms authorized by owner.

**3. Brokers** ☞53—**Instruction as to acts necessary to make broker "efficient procuring cause" of sale, held error; "proximate cause."**

In action by broker for commission, instruction that, if broker was instrumental in bringing owner and purchaser together and set in motion chain of events which culminated in sale being made, as matter of law broker would be deemed to be the efficient and procuring· cause of sale, *held* error, as broker could have performed both of.such acts and yet not have been procuring cause of sale being made; the phrase "efficient procuring cause" being used interchangeably with "proximate cause," and in either case producing cause being held to reach to the alleged result and to be the proximate cause of it.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Efficient Cause; Proximate Cause.]

**4. Brokers** ☞53—**"Proximate cause" defined.**

The "proximate cause" is the efficient cause, one that necessarily sets other causes in operation, producing the result alleged, and whether a cause is proximate or remote does not depend alone on closeness in way of doing in which certain things occurred, and an efficient adequate cause, being found, must be deemed the true cause unless some independent cause is shown to have intervened between it and result alleged.

**5. Trial** ☞215—**Refusal of requested special charge not error where not requested as explanatory of a special issue submitted.**

Refusal of a requested special charge, though it stated a correct general rule of law, was not error under Vernon's Sayles' Ann. Civ. St. 1914, art. 1984a, where not requested as explanatory of a special issue submitted.

**6. Appeal and error** ☞1064(1)—**Trial** ☞232(2)—**General instruction on burden of proof in case submitted on special issues held insufficient and to require reversal in view of timely objection and request for special instructions.**

Where case was submitted on special issues, a general instruction as to burden of proof resting on plaintiff *held* insufficient, and to require a reversal in view of defendant's timely objection thereto, and request for special instructions correctly presenting rule as to burden of proof in cases submitted on special issues.

**7. Brokers** ☞88(1)—**Evidence held sufficient to warrant submission of special issues as to whether real estate broker procuring cause, and agreed amount of commission.**

In action by real estate broker for commission for sale of land on ground that he was procuring cause of sale, evidence *held* sufficient to warrant submission of special issues as to whether owner listed such land for sale with broker, agreed amount of commission, whether broker was procuring cause, and whether owner before sale knew of broker's connection therewith.

**8. Brokers** ☞87—**Judgment for real estate broker suing for commission held not excessive in view of alternative remedies sought.**

Where real estate broker sued another broker and owner for commission for sale of land, on ground that he was procuring cause of sale, and sought judgment either for one-half of commission that owner contracted to pay defendant broker, or for one-half of commission on basis of $5 per acre, agreed on between plaintiff and owner, and suit was dismissed as to defendant broker, *held*, that judgment for plaintiff for one-half of commission based on $5 an acre was not excessive.

**9. Costs** ☞48—**Plaintiff held not entitled to recover from remaining defendant costs incurred by defendant against whom suit was dismissed at plaintiff's request.**

Where suit as against one of two defendants was dismissed at request of plaintiff, *held* that, in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 2035, plaintiff was not entitled to recover against remaining defendant costs incurred by defendant against whom suit was dismissed.

Appeal from District Court, Dallas County; Louis Wilson, Judge.

Action by Joe M. Hancock against H. M. Munger and another. Judgment for plaintiff, and defendant named appeals. Reversed and remanded for further proceedings.

Coke & Coke, of Dallas, for appellant.

J. D. Kugle and W. M. Cramer, both of Dallas, for appellee.

VAUGHAN, J.   Appellee sued one Jim Jones and appellant to recover a commission on account of a sale of real estate. In his original petition filed January 9, 1920, appellee alleged that about April 1, 1919, appellant authorized him to sell his farm located in Limestone county for $125 per acre, and agreed to pay him a commission for so doing of $5 per acre; that later in the month appellee received an inquiry about the farm from Jones, another real estate agent, and agreed with Jones that if the latter found a purchaser for the farm they would divide

the commission; that Jones secured a listing of the farm direct from appellant for the fraudulent purpose of trying to evade payment to appellee of any portion of the commission; that in the latter part of July, following, Jones sold the farm for appellant for an agreed commission of 2 per cent. and that appellee was entitled to one-half thereof, to wit, $2,286.50, but that Jones refused to pay him, etc.; that before the deal was consummated between Munger and the purchasers procured by Jones, appellee notified appellant that he had a one-half interest in the commission due Jones and notified appellant not to pay same over to Jones.

Appellee, on the 14th of April, 1920, filed his first amended original petition, in which he repeated substantially the allegations of his original petition, except he claimed one-half of the commission of $5 per acre instead of one-half of the 2 per cent. commission agreed on between appellant and Jones, and, in addition, he alleged that appellant was advised before the sale was closed with purchasers procured by Jones of appellee's connection with it, and that Jones had procured his original information about the farm from appellee; that appellee was the efficient and procuring cause of the sale; that appellant and Jones, when the sale was made, entered into a conspiracy to defraud appellee of his commission; that appellant agreed to pay 2 per cent. commission and hold Jones harmless against any claim by appellee; that Jones was claiming all the commission; and that appellant was denying any liability to appellee.

In his second amended original petition filed September 17, 1921, upon which the case was tried, appellee repeated the allegations of his amended original petition with some amplification, in which he alleged that on May 10, 1919, appellee again wrote defendant Jones that he would be glad to cooperate with him in the sale of said farm; that if he could find a purchaser he would divide commission with him, and again furnished Jones all information inquired about with reference to the details of said sale; that thereafter, in the fall of 1919, some two or three months after the appellant had listed said farm with defendant Jim Jones, as above stated, and furnished him with the information in reference to the price and terms of the sale of said farm upon which said farm could be bought, and after he had agreed with said Jones to divide said commission on the sale of said farm, he procured a purchaser for said farm at the price and terms which appellee had furnished to him; that said Jones, notwithstanding said agreement, instead of taking the matter up with appellee with reference to the conclusion of said sale and getting additional information in connection therewith, took same up with and closed said deal with appellant, and that said sale has been fully consummated and finally closed according to the listing, terms, and information so furnished by appellee, and that appellant is due appellee and the defendant Jones a commission of $5 per acre on said farm, aggregating $9,146; that appellee was the efficient and procuring cause of said sale being made by appellee through defendant Jones; that by virtue of the original listing of said property with appellee by appellant, and by virtue of appellant's contract with defendant Jones and the sale of said property, and by virtue of appellee being the procuring cause of the sale of said property, he is entitled to have judgment against appellant for one-half of the commission on the sale of said farm on the basis of $5 per acre, or, in the alternative, for $2,286.50 against appellant and Jones, one-half of 2 per cent. commission agreed on by them.

The defendant Jones answered by general demurrer and general denial. Appellant answered by general demurrer, general denial, and a special answer to the effect that said farm was sold through the efforts of Jones, who procured the purchasers for same under a contract with appellant whereby he was to receive 2 per cent. commission; that said commission was paid to Jones; that appellee was not the procuring cause of the sale.

The case was tried before a jury, and, at the conclusion of the evidence, appellee requested the court to enter an order dismissing the case as to defendant Jones, as he failed to make out a case against him. This order was duly entered, the effect of which was to create that condition which would have existed if the suit had originally been brought against appellant as sole defendant. Therefore, in disposing of this appeal, we will only discuss the issues presented by the pleadings between appellant and appellee and the evidence bearing thereon, which are before us on proper assignments and propositions.

Special issues were submitted to and answered by the jury as follows:

"Did the defendant H. M. Munger list the said land in controversy for sale with J. M. Hancock as his agent other than to Chenault?" Answer: "Yes."

"What commission, if any, did the defendant H. M. Munger agree to pay Joe Hancock for making a sale of said land?" Answer: "$5 per acre."

"Was Joe Hancock the procuring cause of the sale of said land?" Answer: "Yes."

"Did the defendant H. M. Munger, before he signed the written contract on July 31, 1919, for the sale of said land, know of Hancock's connection, if any, with it?" Answer: "Yes."

On which the court rendered judgment for appellee in the sum of $4,573; hence this appeal.

Appellant's first proposition, "The court erred in denying Munger's request for a per-

emptory instruction in his favor, as under the uncontroverted evidence Hancock failed to make out a case against Munger," and his second proposition, "Under the uncontroverted evidence, Hancock was not the procuring cause of the sale, therefore the court erred in submitting issue No. 3 as to procuring cause to the jury," will be considered together as presenting in effect but one proposition.

Appellee testified that he had lived in Dallas, Tex., about 6 years, was acquainted with appellant, had known him about 40 years; that he formerly lived at Mexia and knew him there; had known the defendant Jones since 1903, and the Munger farm about 18 or 20 years; that he met Mr. Munger by appointment at the City National Bank in Dallas, Tex., on or about the 3d day of April, 1919, when he listed the farm with him for sale at $125 per acre, gross, and that appellee agreed to pay him $5 per acre commission if he perfected, or caused to be perfected, a sale of the farm; that it was not an exclusive listing; that he wrote to his father, B. F. Hancock, who was employed as manager of the Munger farm, for and obtained from him a rough plat of the farm to show prospective purchasers the tract of land; that after this he received a letter from defendant Jones dated the 23d day of April, 1919, to which he replied under date of April 29, 1919, and received answer from Jones dated May 5, 1919, and to which he replied by letter dated May 10, 1919; to this letter he did not receive a reply; that some time between May 10th and July 26th, he knew that Jones was negotiating a deal; that he did not personally do anything to find the purchasers of the property; that the extent of his participation in finding the purchasers was the letters he wrote to Jones; his claim for commission was based upon that. Mr. Jones interested Messrs. Thomas and Smith, other real estate agents, and they found the purchasers for the farm.

Defendant Jones testified that he wrote the letter of date April 23, 1919, to Hancock after he had been informed that the Munger farm was for sale through appellee; that he received answer of date April 29, 1919, to which he replied under date of May 5, 1919; that he did not receive a reply to his letter of date May 5, 1919. On being shown copy of the letter dated May 10, 1919, from Joe M. Hancock to Jones, the witness testified:

"I never did receive the original letter of which this is a copy. I never received any other letter from Hancock after I wrote him on May 5, 1919, until July 26, 1919."

That he next heard of the farm through R. J. Thomas, of Smith & Thomas, of Greenville, who called him over the 'phone the latter part of June, 1919, and asked him about the farm being on the market; that he

told Thomas that he had failed to receive a reply to his letter to appellant, and to take it up direct with him. After this he called up Mr. Munger and secured a listing of the farm at 2 per cent. commission. He told appellant who the prospective buyers were and arranged to meet him at Mexia. That he talked to Smith & Thomas over the 'phone, and they said they would have their parties at Mexia the next day. The buyers were L. Coffman, from Josephine, ―――― Boyles and ―――― Taggart, of Greenville, and ―――― Edrington, from Mart; that they did not conclude the contract for the purchase of the property at that time; that later on the trade was finally closed; that he heard Smith, the land agent, testify that he (Jones) had listed this land with him, or mentioned to him that he had it for sale when they were together on another deal; that at that time he had no listing of this Munger farm other than through Hancock; that if he had the farm for sale at that time it was through Hancock; that he never heard of the Munger deal any more from Hancock or anybody until Smith told him about the prospective purchasers; then it was that he called up Munger and wanted to show the farm; that at the time the purchasers were mentioned to him he did not have any other listing of the farm except through Hancock up to that time; that it was before he had his first conversation with Munger when Smith & Thomas first saw the land.

T. A. Smith testified that during the year 1919 he was in the real estate business in Greenville with R. J. Thomas, of the firm of Smith & Thomas; that his firm was associated with Mr. Jim Jones in closing a deal between Mr. Munger and Mr. Taggert, Mr. Boyle, Mr. Coffman, and Mr. Edrington, who purchased the Munger farm; that they did not have the farm for sale and only offered it for sale through Mr. Jones; that it was through Mr. Jones that we had the handling of it; that he went to Mr. Jones' office while in Waco on his way to see the farm, did not see Mr. Jones, did not know where the Munger farm was located at that time, and did not have any description of it; that at this time, while in Jones' office, he obtained information from the correspondence between appellee and Jones as to the location of the farm and went out with Mr. Taggart to see it.

The above letters were offered in evidence. By letter of date April 23d, Jones sought to become interested with Hancock in the sale of the Munger farm and requested information as to the number of acres, price, and terms. Hancock, by his letter of April 29th, furnished the information requested and invited Jones to co-operate with him in finding purchaser, stating the amount of commission that would be paid in the event purchaser should be found, and by this letter Hancock

accepted Jones' proposition to become interested with him in making sale of the property. In his letter of May 5th, Jones requested further information, especially a more definite understanding as to the division of commission in the event he should find a buyer for the farm, the amount of cash payment, terms as to notes, rate of interest, etc. By the letter of May 10th from appellee, the information requested by the letter of May 5th was furnished, specifically stating that the commission would be divided between appellee and Jones. Jones testified that he never received the letter of May 10th. Hancock testified that he, in person, wrote and mailed the letter, properly addressed with postage prepaid; that the letter was typewritten and a carbon copy made, which copy he identified as the one offered and admitted in evidence.

[1] This evidence, we think, was sufficient to require the submission of the case to the jury; therefore, we overrule appellant's propositions 1 and 2. Barnes v. Beakley (Tex. Civ. App.) 224 S. W. 531; Murphy v. Linskey, 94 Conn. 475, 109 A. 412; Garner v. Davis (Tex. Civ. App.) 225 S. W. 567; Keener v. Cleveland et al. (Tex. Com. App.) 250 S. W. 151; Masters v. Hunt et al. (Tex. Civ. App.) 197 S. W. 219.

The rule announced in the case last cited, to wit, "If the success of a transaction for the sale of land is directly attributable to the broker originally employed, his right to commission cannot be defeated by the mere fact that the negotiations were conducted or the transaction finally consummated through the medium of another broker, although the terms of the first negotiations may have been varied, and commissions paid to such other broker," is applicable to the facts of the instant case and should govern the determination of the rights of the parties under the issue presented by such facts.

The definition of "procuring cause" submitted by the court to the jury in connection with special issue No. 3, to wit, "In your consideration of the above question No. 3, and in connection with it, the court instructs that it is not necessary that the plaintiff Hancock got the owner. Munger, and the purchasers together, but if he (Hancock) was instrumental in so doing and set in motion the chain of events which culminated in said sale being made, then, as a matter of law, he would be deemed to be the efficient and procuring cause of said sale being made," is claimed to be incorrect by propositions 3 and 4 and 5, on the grounds that said instruction is misleading and permitted the jury to speculate as to causation, and omits to direct the jury's attention to the fact that the procuring cause of the sale must be the proximate, efficient cause thereof; and, further, that it is incorrect because one may be "instrumental" in bringing about a sale and

yet not be the procuring cause thereof, and may set in motion a "chain of events" resulting in a sale and yet not be the procuring cause thereof, and because it fails to embody or present the controlling idea that the procuring cause of the sale must be the proximate, efficient cause thereof, but, on the contrary, it authorizes and permits the jury to attach to remote and indirect causes the legal consequences which the law attaches only to direct and proximate ones. These propositions will be grouped for consideration, as presenting in the main but one proposition challenging the correctness of the charge.

[2, 3] Appellee would have been the procuring cause of the sale of the land on finding a purchaser therefor, ready, able, and willing to buy on terms authorized by or acceptable to the owner; the existence of all of these requirements being essential in order to give rise to a cause of action on the ground that he had performed the contract under which the land was listed with him for sale. Waurika Oil Ass'n No. 1 et al. v. Ellis (Tex. Civ. App.) 232 S. W. 364. Appellee could have been instrumental in bringing the owner and the purchasers together, or he could have set in motion the chain of events which culminated in the sale being made, or both, and yet not have been the procuring cause of said sale being made, in that, it would not necessarily imply that because he was instrumental in bringing the owner and purchaser together, and that he set in motion the chain of events which culminated in the sale being made, that he was the original discoverer of the purchasers on the terms authorized by or acceptable to the owner. The "efficient, procuring cause" is the "proximate cause," and the terms may be, and are, often used interchangeably. In either case the producing cause is held to reach to the alleged result and to be the proximate cause of it. Pelitier v. Chicago, St. P. M. & O. Ry. Co., 88 Wis. 521, 60 N. W. 250.

[4] In connection with and as explanatory of said special issue No. 3, it would have been proper for the court to instruct the jury that "the proximate cause" is the efficient cause, the one that necessarily sets the other causes in operation, producing the result alleged and for which recovery is sought, and whether a cause is proximate or remote does not depend alone upon the closeness in the way of doing in which certain things occur. That an efficient, adequate cause, being found, must be deemed the true cause unless some other cause not incidental to it but independent of it is shown to have intervened between it and the result alleged. Travelers' Ins. Co. v. Murray, 16 Colo. 296, 26 P. 774, 776, 25 Am. St. Rep. 267. As given, the charge was error on the grounds contained in said propositions. Viking Mfg. Co. v. Smith, 226 Mass. 10, 114 N. E. 863; Whit-

comb et al. v. Bacon, 170 Mass. 479, 49 N. E. 742, 64 Am. St. Rep. 317; Crain v. Miles, 154 Mo. App. 338, 134 S. W. 52.

Appellee cites and relies upon the case of McElroy v. Dobbs, 229 S. W. 674, decided by this court, opinion by Associate Justice Hamilton, in which the correct rule of law is tersely but accurately thus stated:

"Before a broker is entitled to recover a commission, he must show that the buyer was procured as the proximate result of his efforts."

However, the appellee relies on the following expression used in connection with the above, "not necessarily that he dealt directly with the purchaser, but that he, himself, set in motion the chain of events which themselves brought the buyer and seller together," as authorizing the giving of the charge. It was not intended that this language should constitute a part of the definition of "proximate cause," but was simply explanatory of the proper application of the above rule of law.

[5] By his sixth proposition appellant claims that the court erred in not giving to the jury the following special charge requested by him:

"A landowner may offer his property for sale through as many persons as he sees fit, and the owners of the Munger farm had the right to offer it for sale through the defendant Jones or any one else without violating right of the plaintiff Hancock."

This charge states a correct general rule of law, but was not requested as explanatory of a special issue submitted. Therefore the court did not err in refusing same. Article 1984a, Vernon's Sayles' Ann. Civ. St. 1914.

[6] Propositions 7, 8, and 9 present errors alleged to have been committed by the court in charging upon the burden of proof: (a) That the court erred in instructing the jury "that the burden of proof is on the plaintiff to establish the affirmative of his cause of action by a preponderance of the evidence," because this charge is incorrect, confusing, and wholly inapplicable to a case submitted on special issues; (b) because the court erred in not instructing the jury, as requested by appellant, that the burden was upon appellee to establish by a preponderance of the evidence the affirmative of the question submitted in special issues Nos. 1 and 3, respectively.

The case was submitted to the jury on special issues, and the charge submitted by the court as to the burden of proof was not sufficient to properly present to and keep before the jury the fact that upon each issue as considered by them the burden of proof rested upon the appellee to establish by a preponderance of the evidence the truth of the material facts involved in such issue.

The error in the charge given by the court, of itself, would not require a reversal; but the fact that appellant timely objected to the giving of that charge, and in due time requested special instructions correctly presenting the rule as to the burden of proof in cases submitted on special issues, became material error, and the propositions are therefore sustained. Sanger v. First Nat. Bank of Amarillo et al. (Tex. Civ. App.) 170 S. W. 1087, par. 4 at page 1092; Wichita Falls, etc., v. Mendoza (Tex. Civ. App.) 240 S. W. 570, par. 9 and 10, at page 573; Texas Baptist University v. Patton (Tex. Civ. App.) 145 S. W. 1063, par. 6 and 7, at page 1067.

[7] Propositions 10, 11, and 13, challenging the answers of the jury to special issues Nos. 1, 3, and 4, on the ground that same are not supported by the evidence and are contrary to the great preponderance of the evidence, are overruled, as the evidence, in our opinion, was sufficient to justify the submission of the issues; likewise, proposition No. 12 is overruled, the evidence being sufficient to authorize the submission of special issue No. 4.

[8] Proposition No. 14, "The judgment against Munger for $4,573 is excessive, for in no event could it have been for more than one-half of the 2 per cent. commission that Munger agreed to pay Jones," would have to be sustained if the judgment had been rendered on that portion of appellee's pleading seeking to recover a joint judgment against appellant and defendant Jones for one-half of the commission that appellant contracted to pay Jones for obtaining a purchaser for the Munger farm. However, on the suit being dismissed as to Jones, appellee by his pleadings sought judgment against appellant for the sum of $4,573, one-half of the commission, on the basis of $5 per acre, and, in the alternative, in the event he should not be entitled to so recover against appellant, one-half of the commission on the basis of 2 per cent. agreed on by appellant and defendant Jones. Therefore, as to whether or not the judgment as rendered is excessive would depend upon whether the recovery was awarded to him under the claim for one-half of the commission at $5 per acre, or one-half of the commission on the basis of 2 per cent. of the consideration for which the land was sold. If on the latter, it would be excessive. That is, it would be beyond the amount sued for, if the recovery was awarded for one-half of the commission at the rate of 2 per cent. Therefore, could not be sustained, as a claim on that basis would be limited to one-half of the total amount due as commission on the basis of 2 per cent. of the price for which the farm was sold. The court evidently awarded judgment on the basis that appellee was entitled to recover one-half of $5 per acre as commission on account of the sale of the land,

allowing appellant credit for the amount paid by him to Jones, which would aggregate the full amount of commission at $5 per acre. The case with defendant Jones dismissed therefrom does not present a claim on the part of two competing land agents with whom the property had been respectively listed so as to invoke the doctrine of procuring cause in order to determine which one of the agents in fact made the sale, and therefore entitled to the commission, as appellee claims the property was listed with him and that the sale was made by him through Jones under this listing, and was not made by Jones under independent listing; that all the acts and conduct on the part of Jones was for the joint use and benefit and service of Jones and appellee. In other words, that under the listing of the land with him, appellee contends that he, through the means and agencies alleged to have been employed by him, procured purchasers ready, able, and willing to purchase, and who did purchase, on terms authorized by appellant, and, if a recovery is had by appellee, it must be under the well-known rules of law applicable to such cases.

[9] By the fifteenth proposition, appellant challenges the correctness of the judgment taxing the costs occasioned by making Jones a party to this suit against the appellant. Jones was made a defendant to the suit by appellee. At the conclusion of the evidence he dismissed his suit as against Jones. The court adjudged all costs against appellant. This action of the court was complained of by appellant in his motion for new trial, which was overruled. This proposition must be sustained. Article 2035, Vernon's Sayles' Ann. Civ. St. 1914, provides:

"The successful party to a suit shall recover of his adversary all the costs expended or incurred therein, except where it is or may be otherwise provided by law."

By his suit, appellee made appellant and Jones parties defendant, each thereby becoming in his own right an "adversary." On the suit being dismissed at the instance of appellee as to Jones, he dismissed therefrom an adversary against whom he was not entitled to recover costs. Appellee having been cast in the suit in so far as Jones was concerned, Jones was thereby entitled to recover of appellee all costs incurred by virtue of having been made a party to the suit. For the costs thus incurred, appellant, in turn, could not be made liable on the ground that he was cast in the suit on the issues between him and appellant; the costs not having been incurred by him. Cooksey v. Jordan et al. (Tex. Civ. App.) 140 S. W. 1175, par. 4 at page 1177; Baughn v. Allen (Tex. Civ. App.) 73 S. W. 1063. This proposition is therefore sustained.

On account of the errors herein indicated, the judgment of the court below is reversed, and the cause remanded for further proceedings not inconsistent herewith.

Reversed and remanded.